[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AND FINDINGS ON PREJUDGMENT REMEDY
1. Plaintiff Marshall Heaven for all relevant times has been a licensed real estate broker in the State of Connecticut and has approximately 25 years of commercial real estate experience principally in the Town of Greenwich. Heaven has been involved in leases for commercial space and sales of commercial buildings.
2. Plaintiff M.H. Heaven Real Estate LLC for all relevant times has been CT Page 7845 a licensed real estate brokerage in the State of Connecticut. Marshall Heaven is its principal and the Court will refer to them collectively as "Heaven" unless noted otherwise.
3. Defendant Pickwick Plaza Associates, is an Illinois General Partnership and owns 3 buildings in the Town of Greenwich, which are called One Pickwick Plaza, Two Pickwick Plaza and Three Pickwick Plaza.
4. Defendant Albert Lawrence, 1111, is a licensed real estate salesperson in the State of Connecticut and is employed by Kenney-Wilson Properties who are the exclusive managers and listing agents for purposes of commercial space in Pickwick Plaza. (See PJR Ex. 3)
5. Defendant Timber Hill Group LLC is a Connecticut Limited Liability Company ("Timber Hill") involved in the financial services business and occupies space in Pickwick Plaza.
6. Thomas Peterffy is the principal of Timber Hill and it appears that Brad Jacobowitz and Earl Nemser are in-house attorneys for Timber Hill.
7. In 1997, Heaven met Peterffy at a social occasion in Greenwich. Peterffy advised Heaven that he wanted to move his company, which at time was in Valhalla, New York to Greenwich, Connecticut, which is where Peterffy resides.
8. For a period of time Heaven canvassed the Greenwich market to locate space. As part of his efforts, Heaven was in contact with Lawrence, who held himself out as the exclusive listing agent for Pickwick Plaza.
9. Sometime during the conversations between Heaven and Lawrence, Heaven was made aware that Alexander Alexander, which became "AON" wanted to sublet its space on the second floor of 2 Pickwick Plaza, and Lawrence supplied Heaven with the name of AON's real estate broker.
10. Heaven efforts were successful and Timber Hill initially rented 18, 419 square feet as a sublet from AON, for a term to run from October 1, 1997 through June 2001. As the lessor, AON paid a commission to Heaven at the standard rate of 5%, which is called "one full commission" for the balance of their sublease term.
11. Peterffy called Heaven and requested that Heaven locate more space in the building as he wanted to expand Timber Hill. Peterffy advised Heaven that if he could not find space at 2 Pickwick Plaza, Heaven should look at other suitable spaces in Greenwich.
12. Heaven again canvassed the Greenwich market for Timber Hill, which CT Page 7846 included calling Lawrence constantly to see if there was any additional space in Pickwick Plaza.
13. At some point in 1999, Lawrence advised Heaven that the space which was then occupied by Pomboy Asset Management was coming available on second floor of 2 Pickwick Plaza. Unlike the AON space which was a sublet, this time the lease would be directly with Pickwick Plaza Associates.
14. On Timber Hill's behalf, Heaven began the negotiations for a separate lease for the Pomboy space. Heaven's negotiations were successful and on June 25, 1999, Timber Hill entered into a written lease directly with Pickwick Plaza Associates as Lessor/Landlord for space occupied by Pomboy Asset Management, which was 2, 291 square feet. The term was to commence on July 1, 1999 and expire on June 14, 2001, the same expiration date as the AON sublease.
15. On or about June 28, 1999, and in connection with the lease of the Pomboy space, Heaven entered into a written commission agreement with Pickwick Plaza Associates ("Pickwick Commission Agreement"). (PJR Ex. 14)
16. In the Pickwick Commission Agreement, Heaven was recognized as the selling broker for the Pomboy lease and was paid a full 5% commission by Pickwick Plaza Associates. Heaven testified and the Court accepts that a selling broker brings the tenant to the property and the listing broker is the agent who holds the property out to the public and the other brokers. Since there is a written commission agreement directly between Heaven and Pickwick Plaza Associates, however, these distinctions lose their importance because it becomes a matter of contract interpretation for the Court.
17. In November of 1999, Lawrence called Heaven to inform him that Pickwick Plaza was now prepared to entertain negotiations for Timber Hill to enter a new lease combining for the original AON lease of 18, 419 square feet, with the Pomboy space, which Heaven immediately communicated to Peterffy.
18. Lawrence called Heaven and instructed Heaven that he had to obtain a letter from Timber Hill recognizing Heaven as their broker. Lawrence's request for a letter was apparently in accordance with Schedule A, section F (1) and (2) of the Pickwick Commission Agreement, which requires a "written letter from Tenant authorizing Broker to negotiate the renewal, extension or lease of additional space prior to the commence of the term of the lease. . . ." CT Page 7847
19. Heaven testified and the Court accepts such testimony that at the time he executed the Pickwick Commission Agreement he was suffering from undiagnosed Type I diabetes and was experiencing severe fluctuations in his blood sugar levels and other debilitating symptoms, including disorientation. Heaven testified and again the Court accepts such testimony, that Heaven had no recollection of signing the Pickwick Commission Agreement, and a copy of such agreement had never been given to him for his files.
20. Despite believing that a formal letter was unnecessary, on February 14, 2000, Heaven obtained a letter from Timber Hill recognizing him as their broker:
 "[T]o assist it negotiating with the Landlord of Pickwick Plaza, Greenwich, Connecticut (the "Landlord" for a new lease of all the rentable space of the second floor and related support space of 2 Pickwick Plaza, Greenwich, Connecticut (the "Premises")" (PJR Ex. 9)
21. Heaven testified and the Court accepts that testimony that on or about February 14, 2000, the date the Timber Hill agreement was signed, he sent it directly to Lawrence. Lawrence admitted that he did receive such letter and had discussions with Heaven about it, although he could not recall the date.
22. On March 9 and 10, 2000, and at other times during this period Heaven sent proposals on Timber Hill's behalf to Pickwick. (PJR Exs. 3, 4 and 5)
23. In clear recognition that Heaven was acting for Timber Hill, on March 15, 2000, Lawrence sent a written counteroffer to Heaven "on behalf of the Landlord of Pickwick Plaza" for space. (PJR Ex. 7). In addition to the space that Timber Hill was already occupying, Pickwick Plaza offered Timber Hill both an "option to renew" that space and an "option to expand" into other space in the complex.
24. The Court notes that at page 3 of Lawrence's letter (PJR Ex. 7) he refers to the commission arrangement between Heaven and Timber Hill for the second floor space, further evidencing that Lawrence had a copy of the Timber Hill Agreement (PIER Ex. 9) by this time.
25. On June 26, 2000, a First Amendment to the Pomboy lease was signed between Pickwick Plaza and Timber Hill. (PJR Substitute Ex. 11).
26. As part of the Lease, Timber Hill secured all of the "rentable space" on the second floor of Pickwick Plaza, which consisted of the AON space, the Pomboy space and the Trout space. CT Page 7848
27. Timber Hill was also given an option of the second floor space occupied by Kennedy Wilson, the building's office manager, in the event that space became available.
28. Heaven testified and the Court accepts his testimony that in his considerable experience, a building's office manager's space in not considered "rentable space" since it is a requirement of the owner for purposes of operating the building. The Court also notes that the Timber Hill Agreements (PJR Ex. 9) which was drafted by Timber Hill, does not reference "the entire space on the second floor", list the floor by square footage or say "all the rentable space, including the space occupied by the building manager." Based on these facts the Court finds that Timber Hill rented all of the "rentable space of the second floor" and has an option on Kennedy-Wilson's space in the event it becomes available, and thus "rentable."
29. The Pomboy First Amendment also gave Timber Hill a "Right of First Offer" "On a minimum of 10,000 contiguous rentable square feet in Pickwick Plaza." (PJR Ex. Substitute 11, Clause XIII, page 17-18). (During the PJR hearing, the parties referred to this space as the Greenwich Partners' space.) Lawrence testified that Timber Hill exercised this right and has taken 16, 420 sq. feet pursuant to this right at rent of $60 per square foot. Lawrence testified that if Heaven is owed a commission on this space it would be in the amount of $246,300.
30. The Pomboy First Amendment also gave Timber Hill the right to expand into space that was then being occupied by PanAmSat corporation. (PJR Ex. Substitute 11, Clause 11(B), pages 2 and 31). It was conceded at the hearing by Lawrence that Timber Hill expanded into this space and that if Heaven is owed a commission on this space it would be in the amount of $189,705.
32. Pursuant to the Timber Hill Agreement (PIER Ex. 9) Heaven submitted an invoice for payment on or about July 27, 2000 for $200,000 for the agreement per the contract. (The invoice is PJR Ex. 12).
33. Timber Hill refused to pay the invoice claiming that because they did not get the office manager's space, they did not get all the "rentable space" on the second floor. Timber Hill also told Heaven that because they entered into an "Amendment" of the Pomboy lease, as opposed to a "new lease" they were further excused from their obligations.
 CONCLUSIONS OF LAW
1. The claims against the landlord, Pickwick Plaza Associates are CT Page 7849 governed in the first instance by Ct. Gen. Stat. sec. 20-325 (a) and if that statute is satisfied, common law principles of contract law.
2. The Pickwick Commission Agreement complies with 20-325 (a). The only element missing from the Agreement is Heaven's address (subsection (b) (2)) which the Landlord had. See PJR Exs. 3.4, 5 and 7. In any event, under subsection (d), all that is needed is "substantial compliance" which in this case there was and it would be inequitable to deny a recovery because of a missing address of the broker. Finally, Lawrence, the Landlord's agent, admitted that the Pickwick Commission Agreement complies with 20-325.
3. Once the threshold of 20-325 is met, the Court must then decide if there probable cause that there will be found a breach of the commission agreement at issue. Here the Court finds that probable cause exists.
4. The Court finds that Timber Hill's exercise of the "Right of First Offer" (Substitute 11, Clause XIII) wherein it took 16, 420 square feet of space formerly occupied by Greenwich Partners for at least a period of 5 years at $60 per foot, to be an exercise of "any option (s) or rights of first refusal in either (i) the Lease, or (ii) any lease of additional spaces. . . ."
5. Under Schedule A, section D of the Pickwick Commission Agreement, there is probable cause that Heaven is owed a 5% commission for the first 5 years of the lease of this space, which Lawrence testified would be $246,300.
6. The Court finds that there is also probable cause that Heaven will be owed a commission for lease of the PanAmSat space. Timber Hill was given the right to expand into this space in Clause 1 B of the First Amendment. (Substitute 11). Although Lawrence testified that this option "expired" when Timber Hill took the Greenwich Partner's space, Pickwick Plaza offered no credible written evidence that Timber Hill took the PanAmSat space via any other mechanism than the First Amendment. Accordingly the Court finds because the PanAmSat space was specifically referenced in the First Amendment, there is probable cause that a judgment will enter in the amount $189,705, the amount that Lawrence calculated would be the commission owed for the first five years on this space.
7. As to Timber Hill, the Court finds that probable cause exists that Timber Hill breached its agreement with Heaven (PJR Ex. 9) and owes Heaven a $200,000 commission. The unrebutted testimony demonstrates that Timber Hill rented all of the "rentable space" on the second floor of 2 Pickwick Plaza, which was the AON space, the Pomboy space and the Trout CT Page 7850 space. The Court finds that office manager's space is not considered "rentable space" until it is vacated by Kennedy Wilson, which at the time of the hearing it was not. Morever, under the First Amendment, Timber Hill has an option on the Kennedy Wilson space (see Clause 11. C) which it can exercise when such space does become "rentable."
9. The Court does find that probable cause exists to award prejudgment interest. The Court finds that there is probable cause that the amounts which are claimed, came due 30 days after the signing of the First Amendment (PJR Substitute 11) on June 26, 2000. In order to secure a potential judgment the Court calculates that approximately 2 years have run since the signing of the First Amendment. Accordingly the Court calculates interest for 2 years as follows:
Claims against Pickwick Plaza:
Space Commission owed 10% Simple Interest for 2 years Total
Greenwich Partners' space, $246,300, $49,260 $295,560
PanAmSat space, $189,705, $37,941 $227,646
Total $523,206
Claims against Timber Hill:
Space Commission owed 10% Simple Interest for 2 years Total
Second Floor
2 Pickwick Plaza $200,000 $40,000 $240,000
10. The Court does not find that probable cause exists that Heaven will prevail on his CUTPA claim.
11. The Court does not find probable cause that Heaven will prevail on his claim against Albert E. Lawrence III.
A prejudgment remedy may issue as stated.
___________________ KARAZIN, J. CT Page 7851